Good morning. Good morning, Your Honors, and may it please the Court. My name is Anuradha Sivaraman. I represent Appellant Keith P. Nance. I'd like to reserve two minutes of my time for rebuttal. All right, Counsel, on behalf of the Court, we thank you for taking this case pro bono. Thank you. The decision below should be reversed for two reasons. First, the District Court abused its discretion in terminating Mr. Nance's shaving waiver without a warning as a sua sponte sanction. Second, the defendants on all of Mr. Nance's religious diet claims based on evidence that was never submitted to him during discovery. As for Mr. Nance's shaving waiver claim, the District Court only told Mr. Nance that the hearing would be over if he failed to sit in a particular chair in the prison conference room during the telephone conference. But after Mr. Nance agreed and exited the telephone conversation, the District Court dismissed his case in its entirety. Roberts, how do you respond to your opponent's argument that it's really your client's fault that he didn't explain the warning because he just on his own hung up the phone? The fact that he understood this to be a dismissal of the hearing was dispositive in that he didn't know that there was a dismissal of the case. And had he been told beforehand of the actual consequences No, no. I got that. And that's a good argument for your side. But on the other hand, if he had not been so rude and sort of obnoxious in hanging up the phone, maybe the judge would have had the opportunity to explain to him, no, this is serious, and your case, your entire case is in jeopardy. But he sort of deprived the Court of the opportunity to even give that warning by unilaterally disconnecting the phone. Your Honor, the record reflects that there was ample time before that exchange happened where the Court could have warned him that the consequences that were heretofore unspecified actually meant dismissal and that the serious and grave consequences actually meant the dismissal of the case, and he could have explained that the termination of the hearing was, in fact, actually a full-on dismissal of the case. So there was But did the Court have to do it at that particular point, rather than waiting until after your client had refused to follow the order? Yes, Your Honor. In this Court's cases involving sua sponte dismissals, a district court must assess or consider alternative sanctions before terminating the case or have issued some type of warning before terminating the case. And the fact that Mr. Nance was never told verbally before the case was terminated requires reversal as is uniform in this case. In addition to the fact that there was no verbal warning, the record itself doesn't reflect in any area that Mr. Nance was warned of the possibility of a dismissal of his case. There was no motion for dismissal. The Court did not. So when the judge says there will be consequences, he doesn't know he's going to be penalized? That's correct, Your Honor. Consequences are unspecified in terms of dismissal. Does the judge have at that time to say specifically what he's going to do? Your Honor, if the Court enters a sua sponte dismissal order, that dismissal has to be clearly noticed to the defendant. That is sort of the uniform law of the circuit, that the sua sponte dismissal sanction cases are unique in the fact that whenever they are entered, the district court must have either given some warning on the record, or the record should reflect some type of notice to the defendant in this case of plaintiff. You keep saying the defendant. You mean the plaintiff. I mean the plaintiff. Sorry, Your Honor. I correct that. This was an in-court hearing, wasn't it? Your Honor, this was a telephonic conference. And it would be an in-court hearing. We've just convenienced him by connecting him by telephone. But it was a court hearing, an official court hearing. Yes, Your Honor. And if he says consequences, he has to specifically say what they are before he can do that? Yes, Your Honor. If the consequence is dismissal, it is only fair to the plaintiff that he be told that, in fact, this is the most drastic consequence that will be levied in this case. Okay. And what case do you rely on that he had to specifically say this case may be dismissed? Your Honor, Hamilton Copper is a case that says that the dismissal was not clearly noticed before the district court entered sua sponte sanctions. The district court in that case warned of sanctions that fell short of dismissal but did not actually specify that dismissal would be the consequence in that case. And in this circuit's sua sponte dismissal cases, the district court must have either given some type of warning or issued some type of other sanctions, neither of which happened here, which requires reversal. Neither does the district court's post hoc rationalizations suffice to justify its decision because of this same precedent. And the policy underlying this is for district courts to not dismiss cases in a fit of pique. And so considering anything after the fact would undermine this policy rationale. So, counsel, would you please point me to the specific language in Hamilton Copper that you're relying upon? Yes, Your Honor. Your Honor, it's on page 1430. It says the district judge delivered some very strong remarks from the bench but fell short of warning counsel about the possibility of dismissal as a sanction. 1430. Okay. Okay. I was looking at page 1430 as well, right after the block quote with I have practiced law. And it said after the district court announced his sua sponte dismissal, he had no time to offer any explanation. But in this case, the court did offer an explanation afterwards. Does that cure any failure to warn? Your Honor, it does not cure because of the policy reasons preventing district courts from dismissing a case entirely without any notice to the plaintiff and then going after the fact to explain its decisions. In Oliva v. Sullivan, in this Hamilton Copper case, in Hamilton v. Neptune, in all of these sua sponte dismissal cases, the district court, the circuit has emphasized the obligation of the district court to give some sort of warning or assessment of alternatives before the fact. And for that reason, post hoc consideration shouldn't suffice in this case. Could you shift to the other? Yes. Moving on to the district court's decision on summary judgment, the district court granted judgment on all of Mr. Nance's religious die claims based on one piece of evidence that wasn't disclosed to Mr. Nance during discovery. And this was the cost of halal meals as being $8.82. Did your client specifically ask for that information when the discovery period was still open? Yes. Mr. Nance asked in his interrogatories and his request for production for information bearing on the cost of calculating halal meals. He was not completely pellucid in the way that he asked for it, but it was clear that he wanted this information and wanted the defendants to show that they had asked around for information about the cost of halal meals. And their response was what? That they either did not have information at the time or were not responsible for looking into the information. The district court erred in relying on this information in granting summary judgment to Mr. Nance because the rule of the circuit is that previously undisclosed evidence should be automatically excluded as a sanction unless it's substantially justified or harmless, and the defendants did not argue and cannot show that in this case. It was not substantially justified because this cost information was within the possession of its current meal contractor and could have been disclosed at any point during discovery. In addition, it wasn't harmless because Mr. Nance would have been able to test the defendants on their burden. For this reason, the district court could not have found no genuine issue of material fact. And their response, the defendant's response is that your client could, of course, have asked for the discovery period to be reopened, to have an opportunity, and he didn't do that. Is that, do you just say, look, he's pro se, it's not fair to expect him to know that he could do that? Yes, Your Honor. The district court's Rand warning likely swayed Mr. Nance away from arguing that. While Rand warnings are usually very helpful for pro se prisoners like Mr. Nance in rebutting a summary judgment motion, the Rand warning, given the facts and the procedural posture of this case, did not alert him to the possibility of pausing proceedings to move to strike or to pause proceedings to move to reopen discovery in order to test the defendant's evidence. And for this reason, procedural fairness counsels against granting judgment in this case. And finally, the court should reinstate the defendants on remand because the district court never determined whether defendants Linderman and Patten were involved in the deprivation of the religious diet. And Mr. Nance argued that Mr. Vicklin was aware of the initial improper denial of the shaving waiver. Well, but you have to – it was his obligation to show some personal involvement or raise a material issue of fact, not just conclusory allegations. So what evidence did he place into the record to raise a material issue of fact regarding personal involvement? Mr. Nance entered into the record a letter that he submitted to Mr. Vicklin saying that he was aware of this initial denial based on his subordinates' behavior, and Mr. Vicklin didn't respond. So Mr. Nance would like to proceed on a conscious indifference claim. I reserve the rest of my time. All right. Thank you, counsel. Good morning, Your Honors. May it please the Court. Neil Singh, Assistant Attorney General from Arizona here for the defendants. And I guess I will just start in the same order that your questioning went to my colleague, that first of all, one thing I would like to address about this proceeding that happened on January 5th was that it is – it was a much more rude and unpleasant situation than what the transcript perhaps may reflect. Now, obviously, no one can testify as a witness to this Court, and this Court has no way to go back and recreate everything as it was. Why does it matter? You're saying his tone was rude? I mean, who cares? I think that does matter, Your Honor, because his conduct in the courtroom, he was there by telephone, bordered on contemptuous. And it's relevant because he actually hung up on the district court. Now, that's not – That is reflected in the record. I don't think we're all aware of that. I guess I'm bothered by the fact that the judge at no point, as your opponent has said, gave any sort of warning that dismissal would be the consequence of his obnoxious, rude, whatever you want to call it, behavior, even contemptuous behavior. And I guess I thought our circuit's law was very clear that when dealing with pro se litigants in particular, that a warning, an explicit warning of that sort was required before sua sponte dismissal could be imposed. Well, my colleague referred to the phrase ample time, as though the district court had ample time to actually give a warning. I think what's – what's dispositive here is that the district court was trying to manage Mr. Nance and was deprived of the opportunity to give him any warnings. Well, I agree with you because he hung up. But why couldn't the judge have simply issued a minute order right after that hearing saying, listen, that was totally unacceptable, you will participate in this conference by sitting in the designated seat, or else your case will be dismissed, and we're going to – and I'm rescheduling it for a week from today. Why couldn't the judge have done that? Well, from the district court's perspective, I think that had already happened. There had been an order issued months earlier saying that these pretrial tasks are considered, quote, critical. The court had now in its hands a notice from defense counsel, myself, that there had been a walkout of a meeting of pretrial preparation. The court already issued a minute entry saying we're going to discuss that at a status conference. But none of the things that you've just mentioned said in any way, shape or form, that if you fail to comply, the consequence will be that your case is dismissed with prejudice. Nothing said that to him. You're right, Your Honor. There's nothing specific addressing this very, very specific possible sanction of dismissal of the case. Don't our cases with respect to pro se litigants require that before sua sponte dismissal? Well, I'm aware of no case which says something that specific. I know that pleadings, of course, are construed in a light, you know, in a liberal light for pro se litigants. But this was just a fundamental compliance with court orders issue. And I think the district court should be afforded latitude and discretion in deciding how to handle it. The situation that the district court was facing, where we already have, first of all, of course, this court is already aware, courts have to undergo a lot of preparation for a full-blown jury trial. The court has been busy doing that. And can I ask, was there a firm trial date set at the point that this January 5th hearing occurred? Your Honor, I can't remember if at that point a firm trial date had been set. We are, our review of the record suggested there was not, that there had been a date set, but that it had been vacated. And so there wasn't some. I'm with you if the trial was going to start in a week. Maybe there wasn't time for the judge to issue the kind of minute order I was describing. But I, we could only figure out that there didn't seem to be a date certain set. And so I didn't, what's the urgency in having to issue the dismissal immediately without giving this at least a chance to comply? And obviously, if the thing is rescheduled and he refuses to sit in the seat after getting the warning, then you wouldn't even be here, because there would be nothing to appeal. Yes. I think the urgency was in getting things going where the trial even could set a trial date. And clearly, the district court is seeing that this is not going to happen. We have a litigant who is refused, he walked out of a meeting, we don't know what the joint exhibits are going to be, there's a lot of things that are missing because of that missed meeting, and now I'm trying to address the problems that were created from that walkout, and I can't even proceed with that. The district court specifically finds in its ruling that there really are no lesser sanctions available. I mean, there can be a further delay in the proceedings. But there was. There's, I'm not, we're not talking about a sanction. We're talking about a lesser step of giving a warning before bringing down the ultimate sanction on this guy's head. And I think, Your Honor, the district court should have discretion in finding that all the warnings that needed to be given have been given. You know, there's nothing else that. I don't think there's anything even close to being a warning that dismissal will be the consequence if you fail to do, I mean, whatever this thing was, to sit in the proper seat. There's just nothing that is that explicit. And especially not that earlier kind of case management order that you're referring to. That was not even close to being explicit. I guess it brings up another point, that the district court found itself in an impossible situation. And to go to the point that my colleague raised about post hoc rationalization, I really think that's an unfair characterization of what the district court did. I agree. The ruling clearly states what the judge's thought process was. He did consider sanctions and staying proceedings, as Your Honor is talking about. The district court in its discretion felt that staying proceedings or delaying proceedings was really going to accomplish nothing. Counsel, why do you say the district court was in an impossible position? Well, I shouldn't say impossible. It was a difficult position. It felt that the district court felt, as reflected in its ruling, that nothing else is going to work. There is no question that managing pro se litigants can be challenging, and I understand how the district court can be impatient. But tell me what case you're relying upon to support the proposition that the district court in certain circumstances does not have to give a warning before sua sponte dismissing a case. Well, first of all, there's no case that specifically says, of course. The courts say that a warning should be given. But I think the facts of each of the cases where – which discuss warnings are pretty helpful for the analysis here. But what's the case that comes closest to saying that in certain circumstances the warning may be dispensed with at the judge's discretion? What does that mean? Your Honor, I think it's in one of these cases, and I apologize for not remembering which one, but I think it may be Hamilton v. Primary Steel. There is case law in the Ninth Circuit, and one of these cases, and I apologize, but I think it's Primary Steel, addresses the fact that a warning is not necessary in egregious circumstances. And so if there is something highly unusual, the district court must have discretion in dealing with that situation. Here, I really think that if Judge McNamee had the opportunity to plainly and clearly explain what the consequences would be in a reasoned fashion, as a judge should be entitled to do in an open court session, the warning would have been given. Counsel, you cited the same case opposing counsel cited, ironically. But on page 1429 of that case, it said the district court had several alternatives available to him, including warnings about possible dismissal if counsel persisted. That doesn't seem to support your theory. And that language in the circumstances of that case doesn't, but here Judge McNamee did consider the possibility of warnings, and he should be entitled to discretion to make a finding that warnings were going to make no difference. That was a case, the Hamilton v. Primary Steel case, was a breach of contract case with counsel, and warnings would work against counsel. And the Hamilton case talked about that. Warnings wouldn't work against the plaintiff in this case. I think that had been demonstrated by the record, that warnings. If there is a warning that you're going to lose the ability to proceed further in this case, don't you think that's more a serious warning than just consequences? It is a more serious warning. I think in the Hamilton case, as I remember, there were nine specific instances of counsel violating the court's order to stop referring to the documents as contracts. He kept referring to documents as contracts in front of the jury, and so this Court's decision, to me, makes a lot of sense, that you could have warned him, if you keep doing this, then it's going to be dismissed. That makes sense, because there was an opportunity, nine different times over a 2-1⁄2-day jury trial. Here we are at the end of the road in a lengthy proceeding, a lengthy set of proceedings, where Mr. Nance simply was not complying with court orders, and the Court found that there was nothing else that would work. So if the Court has no other questions, I'm out of time. I ask that this Court affirm. Thank you, counsel. Rebuttal. Your Honor, just two points on rebuttal. Not to belabor the point, but the district court had several opportunities where it used the word consequences, and this hearing will be over, where it could have easily used the word dismissal. And like Judge Rawlinson mentioned, there was no fact of an actual warning. So the district court couldn't reasonably conclude that a warning would not have worked. Thank you. Let me ask a question, if I could. Suppose, hypothetically, this had happened in an open court, and the judge said you ought to sit over there, and the person says, I'm not going to sit over there, I'm going to sit over here, and there's a dispute, and your client gets up and walks out, says it's over. Wouldn't, in a situation like that, the Court have sufficient latitude to dismiss the case? They walked out, you can't even talk to them. You can't give them any warning. They're out. Your Honor, in the case of a pro se prisoner plaintiff in that case, I think that the walking out would signify at most an end of the present hearing and not a dismissal and final judgment on the case. I'm not saying he's a prisoner. I'm saying any case in a court where he refused to sit where he's going to, and he just walks out. Why do you think that we have to look to the psychological feeling and thinking of the defendant? Or can the judge have responsibility that most trial judges feel they have of running an orderly court? Your Honor, if the litigant walks out, I still think it's a termination of the hearing. I believe that the trial court Yes, Your Honor. I believe the trial court Here, it was a hearing specifically to get to the trial. The person had been violating the rules, and here the district judge was trying to do something. And this person won't even let him do something to fix it. Shouldn't there should be some latitude to running a court, it seems to me? And I just wonder where the line is. You say, all he can say is he's telling me that it's terminated, this hearing is terminated. Yes, Your Honor. Like Judge Watford noted, the district court could enter an order afterwards saying this hearing is rescheduled. If there is further disobedience, the entire case would be dismissed if he had not entered such an order beforehand. You can do that. There's a lot of things you can do. But we leave a lot of discretion to the trial judge. Correct. Because circumstances are always different. Correct, Your Honor. But in the case of the most drastic decisions without a motion, the sua sponte dismissal, that is a special case of cases where some type of warning or assessment of previous sanction is required. Here was a case where the person utterly refused to do anything, causing the defendant or the defense counsel to drive up and then there was complete obstruction occurring. There's a whole line of obstruction occurring by this person. How should that weigh into the decision of whether the judge can just terminate the case at that time? Your Honor, there's no exception in this circuit's law to the sua sponte requirement of providing at least a minimum of a warning before assessing a sanction. So if this person jumped on his feet, began to utter vile and terrible things to the judge, the judge has to say, if you continue to call me one of those things, I'm going to dismiss the case. There's no exception to that in your view. No, Your Honor. And that statement on the record would suffice. And if that behavior continued immediately after the statement, the district court would have had that baseline of a warning to terminate the case. But it is just that simple statement, at least one that is required before finally ending the matter. You'll have to make the statement even then when the person is utterly and completely out of control, yelling obscenities at the judge. You still have to say, if you call me one of those names again, I'm going to dismiss the case. You feel that's absolutely necessary? Yes, Your Honor, unless there had been some sort of indication on the record, a motion, a note in the scheduling order, something that had put the litigant on notice. Okay. Sometimes we sort of think these people understand that they can only push so far. But I see your point, and your point says it's an absolute necessity regardless of circumstance. Thank you, Your Honor. All right.  We appreciate it. Thank you. All right. The case just argued is submitted for decision by the Court. The next case on the calendar for argument, Lewis v. Berryhill. The next case on calendar, Lewis v. Berryhill, has been submitted on the briefs. The next case on calendar for argument is Reichle v. Berryhill.
judges: Wallace, Rawlinson, Watford